

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. ~~99-3458~~-CIV-LENARD
*02-20261*

MAZEN AL NAJJAR,

 Petitioner,

vs.

JOHN ASHCROFT, Attorney General, United
States Department of Justice, *et al.*,

 Respondents.

_____/



# EXHIBIT 1: TRANSCRIPT OF REMAND CUSTODY HEARING
## (VOLUME 1 OF 9)

## AUGUST 14, 2000

TO

### SUPPLEMENTAL COMPLAINT AND RENEWED PETITION FOR HABEAS CORPUS

**U.S. Department of Justice**
Executive Office for Immigration Review
Immigration Court

Matter of

File A 26 599 077

| | |
|---|---|
| MAZEN AL NAJJAR ) | In BOND Proceedings |
| ) | |
| Respondent ) | Transcript of Hearing |

Before R. KEVIN MCHUGH, Immigration Judge .

Date: August 14, 2000            Place: Bradenton, Florida

Transcribed by FREE STATE REPORTING, INC., at Annapolis, Maryland

Official Interpreter:

Language:

Appearances:

|  For the Immigration and<br>Naturalization Service: | For the Respondent: |
|---|---|
| Daniel Vera<br>George Perez<br>Karin M. Guttormsen | Martin B. Schwartz<br>David Cole<br>Joseph Hohenstein<br>Nancy Chang |

UNIDENTIFIED SPEAKER TO JUDGE

-- and, Judge, just you (indiscernible) the Court when we attend the hearing.

JUDGE TO UNIDENTIFIED SPEAKER

Okay.

JUDGE FOR THE RECORD

This is Judge McHugh on the 14th day of August, the year 2000, in Bradenton, Florida.  And this is in the matter of Mr. Mazen Al Najjar, 26 599 077.  It's a telephonic hearing.  The Government's counsel, Mr. Dan Vera, V E R A.  Mr. George Perez, P E R E Z, and Karin Guttormsen, G U T T O R M --

(OFF THE RECORD)

(ON THE RECORD)

JUDGE FOR THE RECORD

And, okay, we're now (indiscernible).  And on the -- representing Mr. Al Najjar are Mr. Martin B. Schwartz, S C H W A R T Z, Mr. David Cole, C O L E, Mr. Joseph Hohenstein, H O H E N S T E I N, and Ms. Nancy Chang, C H A N G.  We're all connected telephonically.  I'm the only one really here in Bradenton.  Okay, now, as we all remember, I sent out an order asking that everybody give me their time that it would take for their case to go.  Mr. -- I guess, Perez, submitted his list and stated that it would 10 to 12 hours for his case and approximately two hours for the classified session.  Mr. Ford sent me a list of 12 witnesses, approximately 12 witnesses that he intended to call.  And looking

A 26 599 077                         1                    August 14, 2000

at it right now, I think we're already up to 14 hours without any cross-examination of Mr. Schwartz' witnesses, which would seem to me to take more than the 17th or 18th of August. And, you know, it just seems to me, right off the top of my head, that we probably maybe ought to move everything to the week of the 29th. And start on the 29th and go 29, 30, 31, and 1 September. And that way we wouldn't have any bifurcated hearings and we'd have everything at one setting. When I say one setting it may take four days setting, but that's the way it appears to be now.

JUDGE TO MR. VERA

Let me go ahead and ask the Government their position.

MR. VERA TO JUDGE

Your Honor, we would concur with that, looking at both our witness list and both case presentation as well as the respondent's case, witness list and what would appear to be case presentation. And the fact that they know that they may have (indiscernible) with rebuttal witnesses, we believe that two days is woefully insufficient and we would be available the week of the 29th.

JUDGE TO MR. VERA

Okay.

JUDGE TO MR. SCHWARTZ

Mr. Schwartz, sir --

MR. SCHWARTZ TO JUDGE

Judge, can we go off the record just a minute so I can

A 26 599 077                    2                    August 14, 2000

confer with the counsel about this proposed change?

JUDGE TO MR. SCHWARTZ

Okay.

(OFF THE RECORD)

(ON THE RECORD)

JUDGE FOR THE RECORD

Okay. We're back on the record. I think everybody agrees that it will probably take considerably more than two days. It would be -- I know that, you know, that starting a hearing on one and then breaking a whole week -- and I have, I cannot be here for the week of the 21st, so that week is out. So I have already planned to be out at that time. And so, you know, I figured that if there is any documents that people keep filing on the 28th, anyway that would give everybody a day to travel. And then we can start promptly Tuesday morning at 9 a.m. on the 29th.

MR. SCHWARTZ TO JUDGE

I think that's fine, that's fine with us.

JUDGE TO MR. VERA

And does the Government also agree?

MR. VERA TO JUDGE

Yes, Your Honor.

JUDGE FOR THE RECORD

Okay. Now there is one logistical matter that I've got to bring up. Mr. Schwartz has been in the courtroom and Mr. Vera and Mr. Perez have both been in the courtroom, and we're going to

A 26 599 077                    3                    August 14, 2000

have limited space for attorneys. You know, the tables are only so big, the counsel table. I would recommend that we go with sitting three counsel at the table and the other counsel, if there are other counsel, would, could sit behind the respondent. You know, we could try that.

JUDGE TO MR. SCHWARTZ AND MR. HOHENSTEIN

Do you think you will have no more than four counsel, Mr. Schwartz and Mr. Hohenstein?

MR. SCHWARTZ TO JUDGE

We would have four, yeah.

JUDGE TO MR. SCHWARTZ

Okay. Well, okay, then we'll squeeze one more chair in. It will be tough, but we'll do that then. Okay. A total of four, okay. Three on one side, and four on the other. Okay.

JUDGE TO MR. VERA

Let me go ahead and Mr. Vera. Mr. Vera, do you have anything that we need to cover?

MR. VERA TO JUDGE

Yes, Your Honor, two issues. The first, of course, is our motion to pretermit that I have to assume in some form or fashion by virtue of the other instructions in your order was in fact denied, but if that's the case we would like a formal ruling on that. The other is, of course, our request for a subpoena of Sami Al Arian who appeared and testified at the prior date noted now, clearly now would now be for the week of the 29th.

A 26 599 077                    4                    August 14, 2000

JUDGE TO MR. VERA

Okay.  The motion to pretermit, I will deny your motion to pretermit.  And I'm going to base it, do it basically upon Judge Leonard's order.  She is ordering me to proceed.  I think there is a question of jurisdiction, but she has taken that away and stated that I will hold hearing so we'll hold a hearing.

MR. SCHWARTZ TO JUDGE

Judge McHugh --

JUDGE TO MR. SCHWARTZ

Yes?

MR. SCHWARTZ TO JUDGE

We want to verify that you do have now the Judge's order denying the Government's motion for a stay, of the order which was just faxed to me about a half an hour ago.

JUDGE TO MR. SCHWARTZ

No, I do not have any knowledge of the motion to deny the stay.

MR. SCHWARTZ TO JUDGE

Okay.  Well, we would make sure that you, the Court gets it, but so that everybody knows that the Government -- I mean, Judge Leonard has denied the Government's motion for a stay of the order.

JUDGE TO MR. SCHWARTZ

Okay.  Well, I would assume I'll get a copy in the mail from Judge Leonard in a day or two.

A 26 599 077                           5                    August 14, 2000

MR. SCHWARTZ TO JUDGE

Okay.

JUDGE TO MR. SCHWARTZ

Okay. And then the question comes up about the subpoena of Sami Al Arian. Okay. How does Dr. Najjar's side feel about that?

MR. SCHWARTZ TO JUDGE

I'm going to let, you know, Professor Cole speak to that issue.

JUDGE TO MR. COLE

Professor Cole, go right ahead.

MR. COLE TO JUDGE

How we feel about their changing the date on the subpoena?

MR. SCHWARTZ TO MR. COLE

No, no, to the issuance of the subpoena.

MR. COLE TO JUDGE

You've issued the subpoena, right, for the 18th?

JUDGE TO MR. COLE

No, I have not yet at this time.

MR. COLE TO JUDGE

Oh, you haven't? I don't -- the -- my understanding is that before the Government can subpoena a witness, they have to demonstrate to the Court that they have made all reasonable efforts to produce the evidence that they seek this person to present through alternative means. And I don't see that the

A 26 599 077                           6                    August 14, 2000

Government has done that.  Their request for a subpoena identifies who Mr. Al Arian is and why they believe his testimony is relevant, buy they don't make any demonstration as to why they are not able to present this evidence without the subpoena.

MR. SCHWARTZ TO JUDGE

Your Honor, Mr. Cole is referring to 8 C.F.R. 287.4(a) --

JUDGE TO MR. SCHWARTZ

Right --

MR. SCHWARTZ TO JUDGE

-- (2)(B).

JUDGE TO MR. SCHWARTZ

Right.

MR. SCHWARTZ TO JUDGE

Which goes over an application for a subpoena and reads that a party who applies for a subpoena shall be required as a condition precedent to its issuance, to state in writing or at the proceeding what he or she expects to prove by such witnesses or documentary evidence and to show affirmatively that he or she has made diligent effort, without success, to produce the thing.

JUDGE TO MR. SCHWARTZ

Okay.  I think Mr. Cole -- or Mr. Perez has something to say.

MR. PEREZ TO JUDGE

Mr. Vera, actually.

JUDGE TO MR. VERA

A 26 599 077                    7                    August 14, 2000

Okay.  Mr. Vera, go ahead.

MR. VERA TO JUDGE

Yes, Your Honor.  And I believe the standard is not quite as stated.  The standard of course is a showing of materiality, relevance and necessity.  We believe, as we stated in our motion for a subpoena, that we have made that showing with specificity.  We have done so because we, of course, despite whatever it is that the Government knew, that doesn't know, about the operations of WISE and ICP, the fact is that Sami Al Arian was the founder and head of both organizations and was in fact very prominently involved in those organizations for a significant period of time.  In that capacity he worked as the supervisor and close associate of Mazen Al Najjar, the respondent in this matter, and as we state has the most specific, precise and complete knowledge of their activities and especially those activities that relate to the very issues that we raised in our prior presentation, such as what happened regarding the visas and why the visas were in fact sought and in some cases obtained for people that again we, the U.S. Government, know or believe to have been involved in terrorist related activity.  We also of course have some issues regarding some of the financial transactions that have been addressed that relate to fund raising activities for terrorist organizations.  And we have the issue that the petitioners', the plaintiff's counsel in the <u>habeas</u> proceedings based significant argument on and that's the issue that while we of course

A 26 599 077                         8                    August 14, 2000

certainly don't accept the standard but the issue of mere association, if in fact we have something more than mere association, even under the formulation presented by plaintiff's counsel and the silent counsel in this case, we believe that we didn't certainly feel out and probe the extent of the relationship that Mazen Al Najjar had with such people as Ramadan Abdullah Shallah (phonetic sp.).  So we believe that we have shown materiality, necessity and the fact that we haven't reached out to anybody else.  I think that falls on that note because that's not a requirement.  But as we put in our proposed witness list we also are calling an INS Supervisory Special Agent who testified before about those issues, this time of course with more specificity, but that does not negate the Government's need and the usefulness to this Court but could make an informed decision on the central issue here of Sami Al Arian, who has the most precise knowledge of Mazen Al Najjar's activities with WISE and ICP.

JUDGE TO MR. VERA

Okay.

JUDGE TO MR. SCHWARTZ

Anybody from Mr., Dr. Najarr's side?

MR. SCHWARTZ TO MR. COLE

David.

MR. COLE TO JUDGE

Well, I would just add, I don't think, I mean, that what

A 26 599 077                          9                    August 14, 2000

they have done is innocently repeat the request the for a subpoena which says that the issues that they would like to question Mr. Al Arian about, we have, obviously have some differences with respect to the materiality of, for example, these visa petitions. And so far we have seen no allegation or evidence whatsoever that Mr. Al Najjar was even involved in the application for the visa petitions. So we have problems with the materiality there. But still, the Government has made no showing that they have made diligent efforts to produce the evidence and are unable to produce the evidence without Mr. Al Arian. And I would just add one other point, which is that Mr. Al Arian has essentially, and the Government of course knows this, has been organizing the defense, the political defense certainly, for Mr. Al Najjar for the three and half years that he has been in detention. He has worked closely, essentially as a paralegal, with the, with our defense team in preparing for Mr. Al Najjar's defense. And for the Government to come in and say we're going to subpoena someone who is essentially on your legal team and put them on the stand, I think is a pretty extreme step. And without having made any showing that they cannot produce the evidence in some other way and instead just to say, well, this is what we would like to ask them about, I don't think they have met the standard under the regulation.

MR. VERA TO JUDGE

May I respond, Your Honor?

A 26 599 077                    10                    August 14, 2000

JUDGE TO MR. VERA

Yes.  Okay, Mr. Vera, go ahead.

MR. VERA TO JUDGE

Just on the additional issue of whether or not it is appropriate to subpoena Sami Al Arian because he might have had some involvement.  If that's the case, then I would assume that Nala Al Arian (phonetic sp.) and some others would be in a similar position.  They're certainly focused on the respondent's witness list.  Beyond that, we all know the rules under the MOW (phonetic sp.) certainly, and under the FOIA rules, pertaining to the protection against revealing attorney/client confidences.  They relate to lawyers who represent somebody in an official capacity and those people employed by the lawyers to represent a particular person in a legal matter.  I don't believe that that kind of showing, it certainly hasn't been made yet but could be made in this case because unless something different exists, I don't believe Sami Al Arian was in fact employed by any of the law firms that are representing Mazen Al Najjar.

MR. COLE TO JUDGE

Well, I don't think the --

JUDGE TO MR. COLE

All right.  Go ahead --

MR. COLE TO JUDGE

-- I can state that no one is paying Mr. Al Arian for the work, but I can also state that a lot of us aren't getting paid

A 26 599 077                          11                       August 14, 2000

for the work and that much of Mr. Al Najjar's representation is pro bono. But the existence of a check or a payment can't be determinative of whether or not someone has played a, played a central role in a legal defense team. You know, pro bono representation goes on all the time. Paralegals and law students and fact investigators work with legal teams all the time, and they are, they are covered by the privilege to the same extent whether or not they are actually paid. There is no distinction between pro bono representation and representation for a fee.

JUDGE TO MR. COLE

Okay.

JUDGE TO MR. SCHWARTZ AND MR. COLE

Well, I'm going to, I'm going to overrule your objection. I'm going to grant the subpoena at this time.

JUDGE TO MR. VERA

Now let me ask you, do you -- the date, Mr. Vera, would be the 29th. So do you want him on the 29th or the 30th?

MR. VERA TO JUDGE

The 29th, Your Honor.

JUDGE TO MR. VERA

The 29th, okay. And anything else, Mr. Vera?

MR. VERA TO JUDGE

No, Your Honor.

JUDGE TO MR. VERA

Okay.

A 26 599 077                    12                    August 14, 2000

MR. VERA TO JUDGE

If I may, Your Honor, real quick --

JUDGE TO MR. VERA

Yes.

MR. VERA TO JUDGE

-- just in case I'm missing something.

MR. VERA TO MS. GUTTORMSEN AND MR. PEREZ

Ms. Guttormsen, or Mr. Perez, anything additional?

MR. PEREZ TO MR. VERA

Nothing.

MS. GUTTORMSEN TO MR. VERA

Nothing additional.

JUDGE TO MR. SCHWARTZ AND MR. COLE

Okay.  Mr. Schwartz, Mr. Cole --

MR. SCHWARTZ TO JUDGE

Your Honor, first, we would like to clarify that this is a remand proceeding that the Government, we would expect the Government witnesses to go first because based on Judge Leonard's decision, she indicated that she felt that this Immigration Court would be able to issue a decision based on the public record of the previous proceeding.  And the Government has some burden here to show on the public record that the decision that your Court entered was incorrect.  And you and your decision, your recent preliminary decision, make that clear that you, on page 6, indicated that -- and as of June of 1997 there was insufficient

A 26 599 077                    13                    August 14, 2000

public information to find the respondent to pose any national security threat.  So our concern here is that it be clear that the Government does have the burden to go forward with that.  And second, that Mazen Al Najjar has been placed on our witness list as our witness and the Government would have the opportunity to cross-examine them, but we would be strongly opposed and believe it to be entirely improper for the Government to make that their own witness.  So --

JUDGE TO MR. SCHWARTZ

All right --

MR. SCHWARTZ TO JUDGE

-- those are a couple of my concerns --

JUDGE TO MR. SCHWARTZ

Okay --

MR. SCHWARTZ TO JUDGE

-- and then --

JUDGE TO MR. SCHWARTZ

Okay.  Let me let Mr. Vera respond to you.

JUDGE TO MR. VERA

Okay.

MR. VERA TO JUDGE

We include in these cases people like the respondent just to ensure that if in fact the other side doesn't call the respondent or somehow seeks to limit cross-examination under the rules that that wouldn't be the case.  We do intend and do believe that it's

A 26 599 077                          14                    August 14, 2000

appropriate to have Mr. Mazen Al Najjar testify fully about those issues that we believe are pertinent to whether or not he is a flight risk or a threat to national security.  If counsel is representing to the Court that they will put him on the stand, and that of course we'll have a full and unfettered opportunity to cross-examination him as deemed appropriate by this Court, then we don't have any problems not putting him on in our case presentation but waiting instead until he is put on the stand and they finish direct examination.

JUDGE TO MR. VERA

Okay.

JUDGE TO MR. SCHWARTZ

Mr. Schwartz.

MR. SCHWARTZ TO JUDGE

Well, I'm just trying to clarify, Your Honor, that the Government would be putting their, you know, be putting their witnesses on first.

JUDGE TO MR. SCHWARTZ

Yes, they'll put their witnesses on first.

MR. SCHWARTZ TO JUDGE

Okay.  The other thing, Your Honor, if Mr. Cole can address, we wanted to address the points of the fact that we still, you know, had not received any proffer of what the witnesses are going to testify to, and the issue of whether we would receive any more unclassified summary in the future.  If the Court would

A 26 599 077                        15                    August 14, 2000

please, if Mr. Cole could address that.

JUDGE TO MR. COLE

Okay, Mr. Cole, you want to address it.

MR. COLE TO JUDGE

Well certainly with respect to the summary the Government -- I mean, I know Your Honor has ruled that you don't have the authority to order the INS to provide a summary. But of course under Judge Leonard's opinion if they didn't provide a new summary, their actions would be unconstitutional because she held that the prior summary was insufficient, so a fortiori they're required to provide if they are going to present any secret evidence, and they have indicated that they intend to, they have to provide a more detailed summary, indeed, a summary which according to Judge Leonard's decision provides Mr. Al Najjar with notice of the evidence against him and an opportunity to confront that evidence. And so -- and they have indicated in their filings that they do intend to present a classified summary. And I think they have said that they were going to do so since Judge Leonard's decision essentially requires them to do so, notwithstanding the lack of regulatory authority on your part to order it, you know, ab initio. It seems to me that it would make sense that we set a deadline for the production of that summary, because that is of course the only way that we have any opportunity to prepare a response to the presentation of the secret evidence. And as it now stands, there is no deadline for

A 26 599 077                           16                    August 14, 2000

the Government to turn over anything further.  So we could show up on the 29th and, you know, get the summary, you know, on the morning of the trial, which I think would be, you know, blatantly unfair under the circumstances.

JUDGE TO MR. COLE

Okay.

JUDGE TO MR. VERA

Well I'll go ahead and say that if it's at all possible, Mr. Vera, if you're going to submit further classified information, then, you know, ultimately, well they'll have to be a summary, as everyone realizes.  And if we can, you can start working on that at the earliest possible time so, because once they get it, they get response, once Al Najjar's team gets it, then of course whether they're surprised or not, whether they're apt to prepare, then they make have to ask for a continuance.  And so that, in the hope of expediting this and keeping it to one week, that would certainly help if you would prepare your summary and be ready to hand it at the outset.

MR. SCHWARTZ TO JUDGE

Could we set a date for the 18th for them to turn that over, since they were -- if we had not postponed the hearing as it was called, they would have had to have had it by then.

JUDGE TO MR. SCHWARTZ

No, I'm not going to do that.

MR. SCHWARTZ TO JUDGE

A 26 599 077                    17                    August 14, 2000

If they have to provide it to the counsel by the 18th?

JUDGE TO MR. SCHWARTZ

No, I'm not going to do that.

MR. VERA TO JUDGE

And I would point out one other thing, Your Honor, certainly we'll do our best to comply with your recommendation, but the procedure would require to turn it over to you and for your to make an official determination that in fact the classified summary as we have prepared it, meaning the U.S. Government, is in fact releasable to the respondent's counsel without compromising national security. We will certainly give you a summary that we believe complies with that, but obviously to make sure that we don't violate any of the regulatory requirements, we would be producing it in Court first for the Court to make that determination.

JUDGE TO MR. VERA

Okay, okey doke (sic) --

MR. SCHWARTZ TO JUDGE

Excuse me, Your Honor.

JUDGE TO MR. SCHWARTZ

Go ahead, Mr. Schwartz.

MR. SCHWARTZ TO MR. COLE

David, do we have any other issues with documents that would be possibly submitted at the hearing, since we have no proffer of what the witnesses are going to testify to, is there any other

A 26 599 077                          18                    August 14, 2000

issue that you wanted to raise before we cut off?

MR. COLE TO MR. SCHWARTZ

Yeah.

JUDGE TO MR. COLE

Go ahead.

MR. COLE TO JUDGE

Let me -- one thing I wanted to clarify, Your Honor, is that it's been our sort of working assumption that there is no need to duplicate what was done on the prior public record --

JUDGE TO MR. COLE

Okay --

MR. COLE TO JUDGE

-- with respect to the bond determination. That is, for example, as you probably see from our witness list, we haven't put in all of the character witnesses that we have presented before --

JUDGE TO MR. COLE

Yeah, all you have to do is, if you wished, you know you just state that we're relying on the prior character testimony and any other witnesses. And I will be happy to -- I agree, we don't need to go into that. You just highlight it and state that you want it considered, and I will consider it.

MR. COLE TO JUDGE

Okay. And I understand -- and am I to understand from your prior ruling that you are disinclined to require any kind of

A 26 599 077                         19                    August 14, 2000

production of documents in advance so that the objections, et cetera, can be, can be prepared?

JUDGE TO MR. COLE

You mean on the classified or the unclassified?

MR. COLE TO JUDGE

No, the unclassified, for the public record.  To the extent that the Government intends to produce documents in the presentation of its case, that it present them sufficiently in advance so that we can prepare our response to them, et cetera, which is, you know, common in, at least at the Immigration proceedings that I have been involved in.

JUDGE TO MR. COLE

Well you know we're talking about bond proceedings.  And, unfortunately, I don't make the rules in bond proceedings.  But the bond proceeding's rules are rather liberal and state that an Immigration Judge may consider almost everything under the kitchen sink.

MR. COLE TO JUDGE

No, I'm not -- right.  But that doesn't preclude us from objecting to your considering something on due process grounds, you know, of the proceedings.  As Judge Leonard's decision makes clear, bond proceedings have to satisfy due process just as do Immigration proceedings have to satisfy due process.  And so to the extent that the consideration of particular evidence might violate due process, that's a legitimate basis for an objection.

A 26 599 077                          20                    August 14, 2000

But obviously the exchange of documents in advance provided the opportunity for those objections to be made.

JUDGE TO MR. COLE

Okay.

JUDGE FOR THE RECORD

Well I will certainly encourage both sides, if you have documents and you think they're going to be questioned, to submit them to the Judge and to both sides in advance.  And it would be nice if you could do so by the 18th.  And it would give everybody an opportunity to review the documents and object to them, but I'm not going to require everybody to lay their cards on the table at this stage of the game.

MR. COLE TO JUDGE

Okay.  Now just in terms of the procedures, my understanding of Judge Leonard's order is that there are these two phases.  You have already ruled that on the basis of the prior public record, the Government has not met its burden.  They're being given an opportunity now to supplement the public record to try to meet the burden that they have not yet met.  And my understanding is that before any consideration of classified information goes forward, that is before any camera hearing is held, Your Honor would be required under Judge Leonard's decision to rule that the Government has not made its case on the public record.

JUDGE TO MR. COLE

I don't think --

A 26 599 077                         21                    August 14, 2000

MR. COLE TO JUDGE

We would essentially have a public record hearing.  At the close of that public record hearing, we would be in a position to argue, presumably, that the Government has not met its burden.  They would be in a position to argue that they have met their burden.  And only if you conclude that they have not met their burden would there be an (indiscernible) presentation.

JUDGE TO MR. COLE

No.  I don't think that's what she said at all.  She did not say that they would be limited in their classified case to, that they had to make A first.  And if they didn't make A, then they had to rely on B.  I don't think they said that -- she said that.  And if the Government wants to introduce classified evidence, you know, it's up to them.  And whether they want to go overkill or underkill (sic), that's up to them.  And I'm not going to tell you how to present your case.  I'm not going to tell the Government how to present their case.

MR. SCHWARTZ TO JUDGE

Your Honor, I think what --

MR. COLE TO MR. SCHWARTZ

Let me just clarify for a moment.

MR. COLE TO JUDGE

So what you're saying is you're going to permit the Government to present classified information before making a determination on the public record as to whether or not they have

A 26 599 077                    22                    August 14, 2000

made their case as to if Mr. Al Najjar poses a threat to national security or a risk of flight?

JUDGE TO MR. COLE

Well, I didn't say that.  And I'm not --

MR. VERA TO JUDGE

Your Honor, if I may?  The question we're raising here --

JUDGE TO MR. VERA

Wait one minute, Mr. Vera, let me --

MR. COLE TO JUDGE

We're just asking this Court, in terms of breaking this down into two steps, at the end of the public record presentation we're asking the Court, in line with Judge Leonard's decision, to go ahead and make a formal ruling as to whether Dr. Al Najjar is a national security threat based on the public record evidence alone before any move has gone on to go to the second step.

JUDGE TO MR. COLE

Okay.  Hold on for one minute.  Let Mr. Vera comment and respond.

JUDGE TO MR. VERA

Mr. Vera.

MR. VERA TO JUDGE

Well, Your Honor, I just think that (indiscernible) this thing is just going to violate the principle of judicial economy. I believe that, clearly, we believe, the U.S. Government does, that we're going to end up with Mr. Al Najjar being detained

A 26 599 077                    23                    August 14, 2000

again or that the order that he be detained without bond is going to be issued against, maybe on this ground or on judicial evidence. But nonetheless if that is the ruling that we ultimately obtain, I would presume that counsel will be seeking to have that ruling reviewed. And if we do that on the, open (indiscernible) evidence only, as opposed to a complete case, we'll just be back here two years from now again. Our prediction is --

MR. SCHWARTZ TO JUDGE

Your Honor --

JUDGE TO MR. SCHWARTZ

One minute, Mr. Schwartz.

MR. SCHWARTZ TO JUDGE

-- we're not asking to bifurcate --

JUDGE TO MR. SCHWARTZ

Hold one minute, Mr. Schwartz --

MR. SCHWARTZ TO JUDGE

-- the proceedings. We're asking the --

JUDGE TO MR. SCHWARTZ

Wait, Mr. Schwartz, Mr. Schwartz --

MR. SCHWARTZ TO JUDGE

-- if the Judge has any knowledge --

JUDGE TO MR. SCHWARTZ

Mr. Schwartz, Mr. Schwartz --

MR. SCHWARTZ TO JUDGE

A 26 599 077                    24                    August 14, 2000

-- to that --

JUDGE TO MR. SCHWARTZ

    Mr. Schwartz, Mr. Schwartz --

MR. SCHWARTZ TO JUDGE

    -- of the hearing --

JUDGE TO MR. SCHWARTZ

    Mr. Schwartz, wait a minute.  Let Mr. Vera finish.

MR. SCHWARTZ TO JUDGE

    Okay.

JUDGE TO MR. VERA

    Go ahead, Mr. Vera.

MR. VERA TO JUDGE

    Again, our position, the position of the U.S. Government would simply be that we believe that we would have to have a hearing that allows for full presentation of the evidence with appropriate rulings from the Court at whatever time the Court deems is appropriate.  But clearly, the Government should be allowed to present its complete case so that when and if this is, this matter is further reviewed, that there is a full record before the BIA, the federal district court, the circuit court, whoever is going to review it, because I would assume that that is going to be a basis for one of the arguments on appeal if we don't have a full record of every classified and non-classified evidence.

JUDGE TO MR. VERA

A 26 599 077                    25                    August 14, 2000

Okay.

JUDGE TO MR. SCHWARTZ

Now, Mr. Schwartz.

MR. SCHWARTZ TO JUDGE

Okay.  And I'm going to let Professor Cole follow me because what I'm saying is going to be very brief.  It's that, basically, what we're asking for is just a determination from the Court at the end of stage 1 indicating whether there, the public evidence has shown Dr. Al Najjar to be a national security threat.  And that's basically what Judge Leonard lays out in her decision.  In fact, she goes on to say that this Court might be able to make that determination without the need for further hearings.  We would be seriously prejudiced in our presentation of the case if the public record proceeding is made, and _in camera_ proceeding, and then to Court to rule on everything once because the whole idea of this process that Judge Leonard has laid out is we don't want to mix the public record portion with the _in camera_ portion. We're looking to this Court to make a decision first on the public record portion, and that's basically what this Court, you know, already did.  And I think Mr. Cole has a follow up comment to that.

JUDGE TO MR. COLE

Mr. Cole.

MR. COLE TO JUDGE

Well, it is in a sense what you've done with respect to the,

A 26 599 077                    26                    August 14, 2000

with respect to the prior proceeding, in response to Judge Leonard's order. But I think that, I think the reasoning for Judge Leonard's direction is that the use of classified information obviously raises serious due process concerns as she has indicated. Therefore, it should not be permitted unless it is necessary. It is not necessary if the Government is able to make its case based entirely on the public record. And therefore, the Court should initially say at the close of the public record, should determine whether or not a case has been made that Dr. Al Najjar must be detained. And if it hasn't, then proceed to consider the classified information.

JUDGE TO MR. COLE

Okay. I will --

MR. VERA TO JUDGE

May I comment, Your Honor?

JUDGE TO MR. VERA

Okay. Mr. Vera, you want to comment.

MR. VERA TO JUDGE

Just to reiterate my point that if in fact the Court finds that there is sufficient evidence in the open Court presentation to hold him as a threat to national security. And we don't go to the second phase. And say Judge Leonard gets an opportunity to take a look at this case again, disagrees with you again, then we're going to be put in a situation where we have to present the classified evidence at the later date.

A 26 599 077                    27                    August 14, 2000

JUDGE TO MR. VERA

Yeah. I'm inclined to agree that, you know, if I, we took a break and then I came to my conclusions and if I ruled one way, there is also the possibility that somebody wants to immediately appeal it. So I will, if the Government wants to present an open case and then a classified case, I will probably, you know, looking at it right now, I see no reason not to allow it.

MR. COLE TO JUDGE

All right. Just the fact that our objection is noted --

JUDGE TO MR. COLE

So noted.

MR. COLE TO JUDGE

But let me then turn to a couple of issues with respect to the consideration of the classified information. The first, the first point is that Judge Leonard's decision says that she does not rule out the use, the consideration of classified information at an in camera proceeding as long as Dr. Al Najjar's right to, and she specifies, to notice of the evidence against him, to a meaningful opportunity to confront the evidence against him and a fundamentally fair hearing are preserved. And as Your Honor has indicated under the regulations an Immigration Judge is not empowered to order the INS to provide a summary. But our position is that you are, you are empowered and indeed obligated by Judge Leonard's decision in the secret evidence, in determining whether or not to consider classified information,

A 26 599 077                    28                    August 14, 2000

you are obligated to make a determination in the first instance as to whether or not the summary which has been provided provides Dr. Al Najjar with those things which Judge Leonard said must be preserved, namely notice of the evidence against him, an opportunity to confront the evidence against him and a fundamentally fair hearing.  And if you conclude that the summary does not, as Judge Leonard concluded the prior summary did not, then it is within your power and under Judge, you know, in your capacity as carrying out Judge Leonard's order here, I would maintain your obligation not to consider classified information unless the Government is able to come back with another summary which does satisfy the requirements that Judge Leonard has set forth.  But there has got to be a threshold determination by the Court that Judge Leonard's dictates have been met, notice, opportunity to confront and a fundamentally fair hearing.

JUDGE TO MR. COLE

Okay.

MR. COLE TO JUDGE

I just want to get a sense of whether you --

JUDGE TO MR. COLE

I think those and apple pie are good.

MR. COLE TO JUDGE

Right.  And -- no -- everybody thinks they're good.  What I'm asking is, what we would like a ruling from Your Honor as to whether or not the summary that the Government provides offers

A 26 599 077                    29                    August 14, 2000

that opportunity to Dr. Al Najjar before any consideration of classified information is presented, because Judge Leonard has said consideration of classified information is not constitutional unless those things are preserved. If you, if they come back and say well, you know, he is alleged to be associated with the PIJ from 1970, you know, 1985 to 1995, that will, you know, in no material respect different from the prior summary. It certainly wouldn't provide him with notice and a meaningful opportunity to confront. And therefore, it would be unconstitutional to consider secret evidence at that point. So what I'm asking is, are you, would you be prepared to make a determination when they provide you with a summary as to whether that summary is sufficient to provide Mr. Al Najjar with the specific requisites that Judge Leonard required.

JUDGE TO MR. COLE

Mr. Cole, I'm not going to deal in hypotheticals. I will make the rulings I have to make, so be it. And then anybody who doesn't like them can appeal it.

MR. COLE TO JUDGE

Well, I just -- I guess then all I'm indicating is that we will seek such a ruling when and if the summary is provided --

JUDGE TO MR. COLE

Okay.

MR. COLE TO JUDGE

-- because we believe that is what is required by the, by

A 26 599 077                    30                    August 14, 2000

the Judge's order.

JUDGE TO MR. COLE

Very well.

MR. COLE TO JUDGE

The other, the other issue that arises with respect to these in camera proceedings. I have been involved in several other cases in which such proceedings have gone forward, is the issue of declassification. It is -- when you take evidence behind closed doors, it is extremely unlikely that everything that is said in that closed door hearing will in fact be, will be properly classifiable. That is if you say, you know, good morning, they say good morning, you know, revealing that is not going to disclose any national security secrets. And so what has been done in the past, what was done for example in the Nasser Ahmad (phonetic sp.) case in New York is that the transcript of the secret proceeding was taken by the FBI and subjected to declassification review. And what the FBI, and it turned out the FBI could declassify a significant portion of that transcript. And that was then provided to counsel for the respondent so that the respondent would have an opportunity to see, at least see, that evidence as to which there was no basis for it to be kept from him. You can't make that determination in advance because who knows where the lines of questions are going to go, et cetera, et cetera, in the secret evidence proceeding, but you can make it after the fact. And so we would ask that the Judge order

A 26 599 077                    31                    August 14, 2000

a declassification review, and a prompt declassification review, given the years that Dr. Al Najjar has been unconstitutionally detained already to follow immediately upon the presentation of the secret evidence with the result of that declassification review then being turned over to counsel for the other side. And it's not to say that we would not present our defense until we see that, but to the extent that that declassified version of the in camera hearing discloses information that we want, that we should have a chance to respond to, that gives us a chance to respond down the line.

JUDGE TO MR. COLE

Well that's quite a logistical request. I don't know if we can --

MR. COLE TO JUDGE

It's been done before.

MR. COLE TO JUDGE

Well, very briefly, it takes time --

JUDGE TO MR. COLE

One minute --

MR. COLE TO JUDGE

-- unfortunately. But it seems to me that there is certainly no basis to have an in camera presentation of evidence that does not need to be kept from the public. If it doesn't need to be kept from the public, it shouldn't be kept from the public. It shouldn't be kept from the respondent. And the only

A 26 599 077                    32                    August 14, 2000

way to assure that no information is unnecessarily kept from the respondent is to subject it to a declassification review, and it obviously has to be a prompt declassification review given the -- and logistically, the FBI does declassification reviews all the time. I'm sure they're doing a declassification review right now of the evidence that the Government intends to submit *in camera* so that they can present the summary.

JUDGE TO MR. COLE

Okay.

JUDGE TO MR. VERA

Mr. Vera.

MR. VERA TO JUDGE

Yes, just very briefly. There is a presumption of regularity of Government operations and unless there is a showing that in fact we violated that or somehow the evidence that we present to the Court is questionable. I believe, with all due respect, that it would be inappropriate for an Immigration Judge to order the INS, the FBI, or any other federal agency to conduct any kind of review of evidence that is already deemed ought to be classified because exposure of that evidence or information would pose a threat to national security. We believe -- of course, even beyond that, that as Mr. Cole has stated, that when evidence of this nature is going to (indiscernible), there is an internal review of the evidence. And that further strengthens the argument of presumption of regularity of Government operations.

A 26 599 077                          33                     August 14, 2000

So we believe that for those two reasons it would be inappropriate for the Court to make a determination without something else, whether it's _sua sponte_ or because counsel for the Government is able to present some sort of authority for it indicate that the evidence that we present is questionable.  Now I know --

MR. COLE TO JUDGE

My question is --

MR. VERA TO JUDGE

-- (indiscernible) is not questionable --

JUDGE TO MR. COLE AND MR. VERA

Hold, hold, wait a minute, both -- hold it, hold it.  Both sides can't talk at once because --

MR. COLE TO JUDGE

I thought he was done.  I'm sorry.

JUDGE TO MR. COLE

No, he, the interpreter -- I mean the transcriber will not be able to identify anybody.  So let Mr. Vera finish.

MR. VERA TO JUDGE

All right.  I understand that the argument to be posed is that they are not going to be privy to that evidence, but the protection against the presentation of inappropriately classified evidence is that which Congress has provided.  And that's the review by an Immigration Judge, an impartial review of the facts and the evidence.  At this time, Your Honor, I have to beg off

A 26 599 077                      34                      August 14, 2000

the teleconference because I have to catch a flight. Mr. Perez and Ms. Guttormsen will be able to handle the rest of this for the Government. Thank you.

JUDGE TO MR. VERA

Okay. Thank you. Good-bye, Mr. Vera. Have a good, safe trip.

JUDGE TO MR. COLE

Okay, now back to Mr. Cole.

MR. COLE TO JUDGE

All right. My understanding, Your Honor, and the Government can correct me if I'm wrong, but is that you don't have, the Immigration Judge doesn't have the authority to say this was improperly classified.

JUDGE TO MR. COLE

And I won't.

MR. COLE TO JUDGE

Right. And I don't think -- and we're not asking you to do that. So there is no -- so what he says, you know, the protection afforded the respondent is that the Immigration Judge will review the evidence. That doesn't go to this question of whether the evidence is properly classified or not. And the point, the presumption of regularity is sort of off the mark. The point is that in advance of the information being presented one can't know whether everything that is said in that in camera proceeding is in fact going to be secret. One can know --

A 26 599 077                    35                    August 14, 2000

presumably, the reason that the Government seeks an _in camera_ presentation is because the evidence that it seeks to present is classified. But that doesn't mean that everything that is said in the course of the presentation of that evidence, things that are said by Your Honor, for example, are necessarily classified. And indeed, the evidence of the prior proceedings with Nasser Ahmad are that substantial portions of what the witness states are not going to be classified. And it makes perfect sense. You have a set of information which is classified which you want to present but of course in an oral presentation with questions, et cetera, by an examining Judge, you can't predict with certainty everything that is going to be said. And so the only way to determine whether or not what has been said is what cannot be revealed to the public and to the respondent is to actually take a look at it. And for the classifying agency, that is the FBI in this instance, to take a look at it and to decide whether or not the information in fact has to be classified. They have done that in prior cases and in those prior cases they found that some of the evidence indeed needs to be classified, but other substantial portions of the evidence did not need to be classified. And that provided the respondent with more of an ability to present a defense. And there certainly just is absolutely no justification for having an _in camera_ presentation of evidence which no agency has deemed needs to be classified. And the agency cannot in advance say with certainty that

A 26 599 077                    36                    August 14, 2000

everything that happens in that hearing cannot possibly be revealed without endangering national security. It's almost, it would be incredulous to assert, to make such a blanket assertion. And so it seems to me the only way to do it fairly and to assure that we are only keeping _in camera_ that which needs to be kept _in camera_ is to have the classifying agency review the matter and determine whether, in fact, some of what was said can be revealed to the respondent, giving, therefore, giving the respondent full opportunity to respond to that which he is entitled to see.

JUDGE TO MR. PEREZ

Okay. Mr. Vera has something -- excuse me, Mr. Perez.

MR. PEREZ TO JUDGE

Yes, Judge. First of all, I would like to point out that we, the Government, do not read Judge Leonard's order as imposing such a procedure on the Court. And therefore we would oppose and object to the creation of such an obligation on the Court. The fact that another Immigration Judge in another proceeding may have allowed that or requested that procedure does not mean that this Court is obligated to do so. And what counsel for the respondent is doing is going beyond the order, Judge Leonard's order. There is no such obligation, there is no regulatory basis for the imposition on that obligation on the Government to immediately provide an unclassified version of the transcripts. And we oppose that on the --

(OFF THE RECORD)

A 26 599 077                     37                     August 14, 2000

(ON THE RECORD)

(TAPE 2)

MR. PEREZ TO JUDGE

-- what the respondent is doing is going beyond the order, Judge Leonard's order. There is no such obligation, there is no regulatory basis for the imposition of that obligation on the Government to immediately provide an unclassified version of the transcript. And we would oppose that --

MR. COLE TO JUDGE

Regulatory authority, Your Honor --

MR. PEREZ TO JUDGE

-- (indiscernible) --

MR. COLE TO JUDGE

-- I'm sorry. Is he finished or not?

JUDGE TO MR. COLE

No, he's --

JUDGE TO MR. PEREZ

Okay, are you finished, Mr. Perez?

MR. PEREZ TO JUDGE

Just quickly. Number one, Judge Leonard's order does not impose that requirement. Number two, there is no regulatory basis for imposing that requirement on the Government.

JUDGE TO MR. COLE

Okay --

MR. COLE TO JUDGE

A 26 599 077                        38                        August 14, 2000

The regulatory authority is quite straight forward, Your Honor. There is, to the extent that there is any regulatory authority for Your Honor to consider classified information at all, it is only to the extent that it is properly classified. If it's not classified, if it's not evidence whose disclosure would threaten the national security, then there is no regulatory authority for you to be considering it _in camera_. And you should be considering it in an open proceeding. And so they, essentially, have to make that showing, and they can't make that showing until the evidence has been looked at by the FBI. And the FBI can look at -- if they're making a documentary submission the FBI can look at that in advance, but the FBI can't look at your questions in advance because they don't know what your questions are going to be. They can't look at what the agent's answers to your questions are going to be because they don't, they can't predict the future. And so the only way to determine whether or not in fact this information is properly classified is to actually have the entity which has the power to make that determination look at it. And if it's not properly classified, there is no regulatory authority for it to be considered _in camera_. That's the authority for requiring the agency to consider whether or not information that was presented _in camera_ was in fact information that needed to be classified. And the fact that experience shows that substantial portions are not, it's not an indication that the Government is acting in bad

A 26 599 077                         39                    August 14, 2000

faith. It's just human nature that when you have a conversation you can't predict in advance where, which way that conversation is going to go, and some of what that conversation goes to may implicate national security but probably some won't. And the only way to make that summation is to look at what was said, and that's all we're asking.

JUDGE TO MR. PEREZ

Okay. I'll take that under consideration.

MR. PEREZ TO JUDGE

Thank you.

JUDGE TO MR. COLE

Okay. Next, Mr. Cole.

MR. COLE TO JUDGE

I believe, unless my co-counsel have anything further to say, but I believe that that does it for us, Your Honor.

JUDGE TO MR. COLE

Okay.

MR. HOHENSTEIN TO JUDGE

Okay. The only --

JUDGE TO MR. SCHWARTZ

Go ahead, Mr. Schwartz, go ahead.

MR. HOHENSTEIN TO JUDGE

I had one small point, Your Honor. This is Joe Hohenstein.

JUDGE TO MR. HOHENSTEIN

Okay. Mr. Hohenstein, go ahead.

A 26 599 077                    40                    August 14, 2000

MR. HOHENSTEIN TO JUDGE

I just want to clarify, I was hearing Mr. Vera say previously something about terrorist organizations in the plural. The previous allegations have been just for the Palestinian Islamic Jihad. And I want to clarify if that was just a slip or is that actually, is there more than one terrorist organization at issue right now?

JUDGE TO MR. HOHENSTEIN

Let me ask Mr. Vera -- Mr. Perez.

JUDGE TO MR. PEREZ

Did you want to respond to that?

MR. PEREZ TO JUDGE

I think that was just a slip. However, we will present our evidence the week of the 29th --

MR. HOHENSTEIN TO JUDGE

I didn't, I didn't hear that response.

JUDGE TO MR. HOHENSTEIN

The answer was he thought that was a slip of the tongue, however, they will present their evidence on the 29th.

JUDGE TO MR. PEREZ

Is that basically it, Mr. Perez?

MR. PEREZ TO JUDGE

Mr. -- those issues will be addressed when we present our evidence.

JUDGE TO MR. PEREZ

A 26 599 077                    41                    August 14, 2000

Okay.

JUDGE FOR THE RECORD

One thing I do need to cover is that Mr. Schwartz has been here. Mr. -- and the Government has been here, with the exception of Ms. Guttormsen I believe. And we have a limited seating in the courtroom. And ordinarily what we have done is -- and let me go ahead and bring you up to date.

JUDGE TO MR. SCHWARTZ

If you'll tell me how many family members you will have, I will give you, you know, there will be a limited amount of family members. The wife -- the children will not be allowed in the courtroom because of the fact that it's in a prison setting, so children are not allowed above the first floor, and so usually the wife and whoever else you want within reason.

JUDGE FOR THE RECORD

And then we'll have requests from the press. And then the press is usually, we try to accommodate them where possible. There will be no electronic devices allowed in the courtroom. They can sketch, the press can sketch if they like, but they can't take photographs and no TV cameras will be allowed. And if in fact the press gets so numerous, then we will usually go on a first come, first serve basis. And there also can be represented -- in other words, they go to a pool. Usually, the sheriff's department handles the P -- the sheriff's department has a PIO, Public Information Officer, and he usually handles the press. I

A 26 599 077                    42                    August 14, 2000

just wanted to bring those to your attention.

MR. SCHWARTZ TO JUDGE

Yeah, Judge, would it be appropriate for us to submit a list of people that we would like to be there?

JUDGE TO MR. SCHWARTZ

Yeah, if you would.  That way, you know, we can sort of, you know, put a group, a number of seats aside for the, for your family members.

MR. SCHWARTZ TO JUDGE

So we're looking at ten family members and ten media people?

JUDGE TO MR. SCHWARTZ

Well, you know, if we have ten family members, then they'll be saying how many media can we get in.  And, you know, we'll just determine how many get in.

MR. SCHWARTZ TO JUDGE

Okay.

MR. COLE TO JUDGE

Okay, Your Honor, one last thing.  I, you know, I understand that the Court, you know, these are very informal bond proceedings and that the Court wants to allow the Government to, you know, has denied our request to allow a proffer of what the Government witnesses are going to testify about.  And we understand those matters, but the Government in this surprise of wanting to bring possibly an additional hostile witness in and the length of their presentation being quite substantive,

A 26 599 077                     43            August 14, 2000

considering the fact that INS Agent West only testified about an hour during the original proceeding, we believe it would be appropriate in line with our request that important documents from the Government be submitted in advance. And the Government -- that the Court at least order the Government, considering the time frame on this case, if they are going to be extensive financial records because they have inferred to the issue of finances in their latest motion, that if the Court would please order the Government to if they're not going to present their records in advance, to at least give some type of proffer of what kind of documentation they're going to present. Otherwise, it will be very difficult for the respondent at the last minute on the day of the hearing to respond to volumes and volumes of potential documentation.

JUDGE TO MR. PEREZ

Mr. --

JUDGE TO MR. COLE

Well, I think I've already answered that once, but I'll --

MR. PEREZ TO JUDGE

No, Judge. This is Mr. Perez. I believe the Court has already addressed and ruled on that.

JUDGE TO MR. COLE

Yeah, I have pretty much said that I'm going to let both sides present their own case.

JUDGE FOR THE RECORD

A 26 599 077                    44                    August 14, 2000

Okay.  What else do we have?

MR. PEREZ TO JUDGE

There's nothing further from the Government, Judge.

JUDGE TO MR. PEREZ

Okay.

JUDGE TO MR. SCHWARTZ, MR. COLE, MR. HOHENSTEIN AND MS. CHANG

Mr. Schwartz, Mr. Cole, Mr. Hohenstein, Ms. Chang?

MR. SCHWARTZ TO MR. COLE, MR. HOHENSTEIN AND MS. CHANG

Do you have anything else there, Nancy, Joe, David?

MS. CHANG TO MR. SCHWARTZ

No.

MR. COLE TO JUDGE

Nothing further, Your Honor.

JUDGE FOR THE RECORD

Okay.  So then we'll see everybody on the 29th day of August at 9 a.m. in the morning.  And anybody who has any documents to, that we would like review please submit to the Court and to the opposing parties as soon as possible, and it will make everything go a little bit faster.

MR. SCHWARTZ TO JUDGE

Okay.

JUDGE FOR THE RECORD

Okay.  Court will be adjourned until then.

MR. SCHWARTZ TO JUDGE

Thank you, Judge.

A 26 599 077                    45                    August 14, 2000

MR. PEREZ TO JUDGE

Thank you, Your Honor.

<u>HEARING CONTINUED</u>

A 26 599 077                    46                    August 14, 2000